# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40174**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kaleb A. BOUSMAN**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 8 February 2023

———————————

*Military Judge:* Andrew R. Norton; Christina M. Jimenez (entry of judgment).

*Sentence:* Sentence adjudged on 6 May 2021 by GCM convened at Cannon Air Force Base, New Mexico. Sentence entered by military judge on 27 July 2021: Bad-conduct discharge, confinement for 15 months, reduction to E-1, and a reprimand.

*For Appellant:* Major Alexandra K. Fleszar, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Morgan R. Christie, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, POSCH, and RICHARDSON, *Appellate Military Judges.*

Chief Judge JOHNSON delivered the opinion of the court, in which Senior Judge POSCH and Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

JOHNSON, Chief Judge:

A general court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of one specification of resisting apprehension, one specification of failure to obey a lawful order, one specification of controlling a motor vehicle while drunk, one specification of wrongfully using provoking language, one specification of assault with a dangerous weapon, and three specifications of simple assault, in violation of Articles 87a, 92, 113, 117, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 887a, 892, 913, 917, and 928.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 15 months, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the findings or sentence, but waived automatic forfeiture of pay and allowances for the benefit of Appellant's dependent child for a period of six months.

Appellant raises six issues for our consideration on appeal, which we have consolidated and reordered for purposes of our analysis: (1) whether Appellant's convictions for Specification 2 (simple assault), Specification 3 (assault with a dangerous weapon), and Specification 4 (simple assault) of Charge I are legally and factually sufficient and may be affirmed on appeal; (2) whether trial counsel's findings argument was improper; (3) whether the military judge erred by denying Appellant credit for the Government's violations of Article 13, UCMJ, 10 U.S.C. § 813; and (4) whether the doctrine of cumulative error warrants relief.[2] In addition, although not raised by Appellant, we address an additional issue: the convening authority's failure to state his reasons for denying Appellant's request to defer his punishments. We have carefully considered issues (3) and (4) and find they do not require discussion or warrant relief.[3] We further find Appellant's conviction for assault with a dangerous weapon is not factually sufficient and set it aside, but affirm the lesser included offense of simple assault with a firearm in violation of Article 128, UCMJ, affirm the remaining findings, and reassess Appellant's sentence.

---

[1] The military judge found Appellant not guilty of one specification of insubordinate conduct toward a noncommissioned officer, one specification of failure to obey a lawful order, and three specifications of aggravated assault in violation of Articles 91, 92, and 128 UCMJ, 10 U.S.C. §§ 891, 892, 928. The military judge found two of the specifications of simple assault of which he found Appellant guilty were lesser included offenses of aggravated assaults of which he found Appellant not guilty.

[2] Appellant personally raises issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] Issue (3) was thoroughly litigated before trial and addressed in a written ruling by the military judge.

## I. BACKGROUND

Appellant was stationed at Cannon Air Force Base (AFB), New Mexico, in June 2020 at the time of the offenses for which he was convicted. Appellant was married at the time and had one child, but his spouse and child had moved to another state without him. Appellant lived in an area of base housing known as Chavez Housing, which was across a street and adjacent to the main part of Cannon AFB.

Technical Sergeant (TSgt) DC was Appellant's next-door neighbor in Chavez Housing, where TSgt DC lived with his wife and children. TSgt DC planned a barbecue at his house on the evening of Saturday, 6 June 2020, to which he invited Appellant and others. TSgt DC knew Appellant worked part-time at the base's auto hobby shop on Saturdays. As TSgt DC was outside his house preparing for the barbecue, he saw Appellant return home around the middle of that day to care for his dogs. TSgt DC and Appellant conversed briefly, and TSgt DC had the impression Appellant "was having a rough day at work" and was "a little bit annoyed." However, Appellant was "talking coherently" and "holding a normal conversation," and TSgt DC thought little of their conversation when Appellant returned to his work.

TSgt DC next heard from Appellant at approximately 1900 that evening, when he received a text from Appellant asking if TSgt DC knew "how to do stitches." After they exchanged some texts, Appellant indicated he intended to "take care of it himself" but he would be late to the barbecue. Appellant came to TSgt DC's house at approximately 2100, with an apparent cut on his torso. At trial, TSgt DC described Appellant's appearance:

> He looked worse for wear. He was wearing a tank top that had been cut opened, he was bleeding pretty bad. The hole in his tank top was big enough that I could see where he had bandaged himself. He just didn't look good.

When TSgt DC questioned Appellant about what had happened, Appellant apologized for being late but claimed he had gone "to collect some money that somebody owed him" when he had been "jumped" by "some guys," one of whom stabbed him before Appellant "beat the guy up." However, Appellant persistently refused suggestions from TSgt DC and others that he seek medical attention and insisted he was "fine." According to TSgt DC, Appellant was not stumbling or slurring his words, and he was speaking coherently. Appellant ate a plate of food as he conversed with TSgt DC in the driveway of the house. TSgt DC recalled Appellant had a bottle of tequila in his hand at some point, but did not remember whether he saw Appellant drink from it or not.

In the meantime, elsewhere on Cannon AFB, Senior Airman (SrA) KC, who worked with Appellant at the auto hobby shop and considered him a friend,

had a conversation about Appellant with KR, the auto hobby shop manager. SrA KC had seen and conversed with Appellant that day at work and had not noted anything out of the ordinary. However, that night KR sent SrA KC a text message asking SrA KC to call. When they spoke, KR explained Appellant had sent KR a photo that apparently depicted Appellant in a bloody shirt. KR asked SrA KC to go check on Appellant at his residence. As a result, SrA KC and a friend who was with him at the time drove in separate cars to Appellant's house while Appellant was at the barbecue at TSgt DC's house.

TSgt DC testified these two cars arrived unexpectedly at his driveway at a high rate of speed. TSgt DC, SrA KC, and another friend of Appellant who was attending the barbecue, CC,[4] described the ensuing encounter in somewhat different ways, but generally agreed on certain elements. When SrA KC arrived and exited his car, Appellant took out a pocketknife, opened it, and confronted SrA KC in the driveway with the knife in his hand. SrA KC said he had come to check on Appellant, but Appellant wanted SrA KC to leave. SrA KC and CC later testified Appellant held the knife to SrA KC's stomach during the confrontation. After failing to persuade Appellant to accept assistance, SrA KC and his friend returned to their cars and drove away.[5]

Appellant then returned to his seat in the driveway. However, TSgt DC perceived Appellant was angry and agitated after SrA KC left. After a "couple of minutes," Appellant went into his house. CC followed Appellant into the house. According to CC, after he again told Appellant to go to a hospital or get treated, Appellant held up a knife toward CC's throat, approximately five or six inches away from CC's neck. In response, CC raised his hands between the knife and his neck. CC subsequently testified Appellant told CC that Appellant was leaving and they were "not going to see him again." While still holding a knife near CC's throat, Appellant then pulled out a handgun, warned CC "don't call the cops or else," and put the gun against CC's torso. CC described the gun as "tan" in color; however, he did not have an opportunity to inspect it and did not know if it was loaded. CC responded that Appellant could leave if he wanted to.

Appellant then told CC they were going outside and to "put [his] hands down," and they departed the house with CC walking in front of Appellant. CC later testified he did not know what Appellant was holding in his hands when CC exited the house, or if Appellant had "put [the gun] away or stopped or anything," because Appellant was behind him. TSgt DC saw them come outside;

---

[4] CC was an active duty Air Force member in June 2020 and at the time of Appellant's trial.

[5] The military judge found Appellant not guilty of a charged assault on SrA KC with a dangerous weapon.

he observed Appellant was holding an "extremely long" Bowie-type knife and had a handgun tucked into his waistband at his lower back. Appellant got in his truck and drove away. CC, who looked "afraid" and "shaken up" to TSgt DC, said Appellant had "pulled a gun on him."

In the meantime, while Appellant was inside his house with CC, TSgt DC's wife had called security forces. SSgt AG and SrA AA[6] from security forces were dispatched from the main base to Chavez Housing to respond to what was described as "a possibly intoxicated, injured, suicidal, panicked, combative individual that was also armed," driving an old blue pickup truck. SSgt AG and SrA AA arrived at the gate to Chavez Housing and used their vehicle to block the outbound lane. Almost immediately, they saw Appellant's truck driving toward the gate. Appellant's vehicle made a turn, and SSgt AG and SrA AA followed him. They found Appellant attempting to pull his truck into the open garage of a house; however, Appellant appeared to have gotten his truck wedged between a vehicle inside the garage and the wall of the garage. SSgt AG and SrA AA exited their vehicle and SSgt AG began giving Appellant instructions to place his arms in the air, turn the truck off, and exit the truck. Appellant did not initially comply, and he shouted back that SSgt AG should drag him out of the truck while appearing to reach behind his seat. Appellant eventually did exit the truck after two additional security forces members, GM[7] and SrA TW, arrived.

Appellant then began walking toward the security forces members, shouting expletives and insults at them, and telling them to shoot him because that was "all [ ] cops are good for." GM and SrA AA observed the handle of a pocketknife protruding from Appellant's front pants pocket. SSgt AG, GM, and SrA AA attempted to calm Appellant by talking to him, but SSgt AG observed Appellant was becoming more "hostile" and "aggressive." None of the security forces members drew a weapon at any point during the encounter.

Eventually, after Appellant took a step toward SSgt AG, GM grabbed Appellant's arms from behind and the two of them fell to the ground. SSgt AG and SrA AA moved to help GM control Appellant, who resisted vigorously. SrA AA saw that Appellant had managed to grab his pocketknife and open the blade, and Appellant was making stabbing motions towards GM's leg with it. However, SrA AA did not see the knife contact GM's body. SrA AA grabbed Appellant's wrist and took the knife from him. GM heard SrA AA call out "knife" during the struggle, but he never saw the knife in Appellant's hand, he

---

[6] SrA AA subsequently separated from the Air Force and was a civilian at the time of Appellant's trial.

[7] GM was an active duty Air Force member in June 2020 and at the time of Appellant's trial.

was not aware that Appellant was attempting to stab him, and he did not feel the knife make contact with him.

With difficulty, the security forces members were able to subdue and handcuff Appellant.[8] They noted Appellant smelled like alcohol. Later that night, approximately three hours after they apprehended Appellant, security forces took Appellant to the base medical facility to have his blood drawn. Appellant physically resisted the initial attempt to draw his blood; during the struggle, he licked the exposed arm of one of the security forces members who was attempting to restrain him. Appellant eventually submitted to the blood test. According to Dr. ES, the forensic toxicologist who testified at trial, subsequent analysis found Appellant's blood alcohol content at that time was 0.098 "gram percent."[9] By extrapolation, Dr. ES estimated that Appellant's peak blood alcohol concentration earlier on the night of 6 June 2020 might have been approximately 0.143 gram percent.

After Appellant's apprehension, security forces recovered a loaded, black .40 caliber handgun from Appellant's vehicle.

The following afternoon, Appellant texted an apology to TSgt DC stating that "he understood if [they] didn't want him to come around." TSgt DC responded to the effect that he just wanted to make sure Appellant was "okay." Appellant came to TSgt DC's house and sat with him in the driveway that afternoon. Appellant told TSgt DC, *inter alia*, that Appellant put up a big fight when security forces attempted to arrest him and "it took a lot of cops to end up getting his hands." Appellant did not mention a knife or gun. That same day Appellant also sent a non-specific apology to CC by text message.

Appellant subsequently agreed to speak to agents of the Air Force Office of Special Investigations (AFOSI) with his defense counsel present; the Government introduced a videorecording of this interview at trial. Appellant professed not to remember many of the events of the night of 6 June 2020. However, Appellant admitted to the agents he had made the cut on his torso himself and lied to TSgt DC about being attacked. Appellant said he made up the story because he did not want others to know he cut himself. In addition, he described leaving TSgt DC's barbecue to go into his house, where he "grabbed" his "normal carry" gun, which he put behind the seat of his truck. Appellant told the agents that when he was not carrying it, he normally left that

---

[8] Because of Appellant's resistance, the security forces members had to chain two pairs of handcuffs together because they could not get his wrists close enough together for one pair.

[9] We understand "gram percent" to be a reference to the measurement of grams of alcohol per 100 milliliters of blood.

particular gun, a black .40 caliber pistol, unloaded on a table in his house. Appellant told the agents that after he entered his house, he turned around and discovered CC behind him. According to Appellant, CC tried to "stop" Appellant, and Appellant told CC to get out of his way, or words to that effect. Appellant said he could not remember if he was already holding the pistol when he saw CC, and he did not say anything about holding either a knife or a gun toward CC.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted), *rev. denied*, 82 M.J. 312 (C.A.A.F. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (second alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

The elements of the offense of assault with a dangerous weapon under Article 128, UCMJ, include: that the accused *offered to do bodily harm* to a certain person; that the offer was made with the intent to do bodily harm; and that the accused did so with a dangerous weapon. 10 U.S.C. § 928(b)(1); *see Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 77.b.(4)(a).

The elements of simple assault under Article 128, UCMJ, include: that the accused *attempted to do or offered to do bodily harm* to a certain person; that the attempt or offer was done unlawfully; and that the attempt or offer was done with force or violence. 10 U.S.C. § 928(a)(1) and (2); *see MCM*, pt. IV, ¶ 77.b.(1).

The Manual explains the difference between "attempt-type" assault and "offer-type" assault:

> An attempt-type assault requires a specific intent to inflict bodily harm, and an overt act—that is, an act that amounts to more than mere preparation and apparently tends to effect the intended bodily harm. An attempt-type assault may be committed even though the victim had no knowledge of the incident at the time.

> [ ] An offer-type assault is an unlawful demonstration of violence, either by an intentional or by a culpably negligent act or omission, which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm. Specific intent to inflict bodily harm is not required.

*MCM*, pt. IV, ¶ 77.c.(2)(b)(i) and (ii).

An accused may be found guilty of a lesser included offense of the offense charged. Article 79(a), UCMJ, 10 U.S.C. § 879(a). "Whether one offense is a lesser included offense of another offense is a question of law." *United States v. Gonzales*, 78 M.J. 480, 483 (C.A.A.F. 2019) (citation omitted). An offense is a lesser included offense when it is "necessarily included in the offense charged." Article 79(b)(1), UCMJ, 10 U.S.C. § 879(b)(1). The United States Court of Appeals for the Armed Forces has explained:

> The "elements test" determines whether an offense is "necessarily included in the offense charged" under Article 79, UCMJ. We have applied the elements test in two ways. The first way is by comparing the statutory definitions of the two offenses. An offense is a lesser included offense of the charged offense if each of its elements is necessarily also an element of the charged offense. The second way is by examining the specification of the charged offense. An offense can also be a lesser included offense of the charged offense if the specification of the charged offense

> is drafted in such a manner that it alleges facts that necessarily
> satisfy all the elements of each offense.

*United States v. Armstrong*, 77 M.J. 465, 469–70 (C.A.A.F. 2018) (citations omitted).

**2. Analysis**

Appellant challenges the legal and factual sufficiency of his convictions for Specifications 2, 3, and 4 under Charge I. We address each specification in turn, beginning with the first Appellant addresses, Specification 4.

### a. Charge I, Specification 4 (Simple Assault Lesser Included Offense)

Specification 4 of Charge I alleged Appellant: "did, at or near Cannon [AFB], New Mexico, on or about 6 June 2020, with the intent to inflict bodily harm, commit an assault upon [GM] . . . by attempting to stab him with a dangerous weapon to wit: a knife."

The military judge announced the following finding as to Specification 4 of Charge I: "Not Guilty of the charged offense of assault with a dangerous weapon, but Guilty of the lesser included offense of simple assault."

Appellant contends the simple assault of which the military judge convicted him was not a proper lesser included offense of the charged aggravated assault under Article 128, UCMJ, and the conviction must be set aside. We disagree.

Simple assault in violation of Article 128, UCMJ, may be charged under the theory that the accused either "attempted" to do bodily harm to the victim or "offered" to do bodily harm to the victim. *MCM*, pt. IV, ¶ 77.b.(1). As Appellant notes, in contrast, the elements of the current version of Article 128, UCMJ, as articulated in the Manual provide that an aggravated assault with a dangerous weapon not actually inflicting bodily harm requires an "offer" to do bodily harm with the weapon; there is no provision for an attempt-type aggravated assault with a dangerous weapon. *MCM*, pt. IV, ¶ 77.b.(4)(a).[10]

As the Manual explains, attempt-type assaults and offer-type assaults are not mutually exclusive. For example, if a perpetrator swings at the victim attempting to strike him, and the victim sees the swing and is thereby put in apprehension of being struck, the perpetrator may be guilty of both an attempt-type simple assault and an offer-type simple assault. *See MCM*, pt. IV, ¶ 77.c.(2)(b)(iii)(C). Appellant's alleged attempt to stab GM could be both an

---

[10] As Appellant notes, prior versions of the Manual provided for both attempt-type and offer-type aggravated assault with a dangerous weapon. *See, e.g.*, *Manual for Courts-Martial, United States* (2016 ed.), pt. IV, ¶ 54.b.(4).

attempt and an offer to do bodily harm, provided the attempt created in GM "a reasonable apprehension of receiving immediate bodily harm." *MCM*, pt. IV, ¶ 77.c.(2)(b)(ii).

Nevertheless, Appellant contends Specification 4 cannot serve as a basis for his conviction for a lesser included offense of simple assault under an offer-type theory. We agree with him on this point. The evidence indicates GM was not aware of Appellant's attempt to stab him with the knife at the time it occurred. Although he heard SrA AA call out "knife," GM did not see the knife or Appellant's attempt to stab him, was unaware of the attempt at the time, and therefore was not put in reasonable apprehension of immediate bodily harm by the attempt. Although GM may have learned of Appellant's attempt later, he would not have been put in reasonable apprehension of immediate bodily harm of being stabbed at that point because Appellant had been disarmed and GM was no longer in danger. Moreover, although Appellant's action may have caused SrA AA apprehension, SrA AA was not the named victim, nor was he put in apprehension that Appellant's attempt to stab GM would cause SrA AA bodily harm.

However, we conclude the military judge *could* properly find Appellant guilty of simple assault on an attempt-type theory. Appellant is correct that the elements of aggravated assault with a dangerous weapon under Article 128, UCMJ, includes only offer-type assault. However, "[a]n offense can also be a lesser included offense of the charged offense if the specification of the charged offense is drafted in such a manner that it alleges facts that necessarily satisfy all the elements of each offense." *Armstrong*, 77 M.J. at 470 (citations omitted); *see also United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (holding that although the elements of housebreaking are not necessarily included in the elements of burglary, *as charged* the specification included all the elements of housebreaking *and* burglary). Moreover, "[a] specification is sufficient if it alleges every element of the charged offense expressly or by necessary implication." Rule for Courts-Martial (R.C.M.) 307(c)(3). In this case, Specification 4 alleged Appellant "commit[ted] an assault" on GM by "attempting to stab" him with a knife "with the intent to inflict bodily harm." This specification thus alleged expressly or by necessary implication every element of an attempt-type simple assault: that Appellant attempted to do bodily harm to GM; that the attempt was done unlawfully; and that the attempt was done with force or violence.

Because Specification 4 of Charge I thus incorporated both aggravated assault with a dangerous weapon and simple attempt-type assault, Appellant was on notice to defend against both the greater and lesser offenses. He knew the Government intended to prove he attempted to stab GM with a knife with the intent to inflict bodily harm. Moreover, the military judge found Appellant

10

guilty of a lesser-included offense without modification of the specification *as charged*. Accordingly, we are not persuaded by Appellant's arguments that he lacked adequate due process notice that he might be convicted of such a lesser included offense. *See United States v. Riley*, 50 M.J. 410, 415 (C.A.A.F. 1999) ("An appellate court may not affirm an included offense on 'a theory not presented to the' trier of fact." (citation omitted)).

Relying on *United States v. Walters*, 58 M.J. 391 (C.A.A.F. 2003), Appellant further contends that our Article 66, UCMJ, 10 U.S.C. § 866, review is precluded because it is "impossible for this Court to determine on which theory of simple assault Appellant was found guilty and which he was acquitted." However, this situation does not raise the fatal ambiguity at issue in *Walters*, which specifically addressed the situation in which a finder of fact excepts "on divers occasions" language from a specification without identifying the single occasion of which they found the accused guilty. *Id.* at 396–97. The military judge made no such exception from Specification 4 of Charge I, nor did the specification even allege "on divers occasions." Moreover, in general, "[a] factfinder may enter a general verdict of guilt even when the charge could have been committed by two or more means, as long as the evidence supports at least one of the means beyond a reasonable doubt." *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007) (citations omitted). In Appellant's case the Defense made no request for special findings, and the evidence supports Appellant's conviction for simple assault against GM beyond a reasonable doubt.

Having given full consideration to Appellant's arguments, and drawing every reasonable inference from the evidence in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's conviction for simple assault as a lesser included offense under Specification 4 of Charge I. Additionally, having weighed the evidence in the record of trial, and having made allowances for the fact that the trial judge personally observed the witnesses and we did not, we also find the evidence factually sufficient.

### b. Charge I, Specification 2 (Simple Assault Lesser Included Offense)

Specification 2 of Charge I alleged Appellant: "did, at or near Cannon [AFB], New Mexico, on or about 6 June 2020, with the intent to inflict bodily harm, commit an assault upon [CC] . . . by pointing at him with a dangerous weapon to wit: a knife."

Appellant contends the military judge's finding of guilty of a lesser included offense of simple assault based on Specification 2 of Charge I is legally and factually insufficient. He contends an attempt-type simple assault was unavailable as a lesser included offense for reasons similar to his argument with respect to Specification 4 of Charge I, addressed above—that is, the elements

of the charged aggravated assault with a dangerous weapon under Article 128, UCMJ, only permit an offer-type theory. With respect to a lesser included offer-type simple assault, Appellant contends the evidence does not support a finding that CC felt reasonable apprehension of bodily harm when Appellant held a knife toward him. We find the evidence is sufficient to support Appellant's conviction on an offer-type theory of simple assault.[11]

On direct examination, CC testified that after he followed Appellant into his house, Appellant held a knife "up to [his] throat, maybe just a little distance away." On cross-examination, CC estimated the blade was approximately five or six inches from his neck. CC further testified on direct examination, "At that point [CC] threw [his] hands up between [Appellant] with the blade and [CC's] throat, trying to give [himself] more of a cushion." CC testified that "while [Appellant] was standing there with the knife to [CC's] throat," Appellant told him that he was leaving, they would not see him again, and "'don't call the cops or else,'" at which point he held the handgun to CC's "stomach." Appellant testified that at that point he felt "a little fear" and "suddenly betrayed."

Appellant cites the following cross-examination from CC's testimony:

> Q. Now, when he had that knife out, based on all the factors you observed, everything you knew about him before and what you knew about him from that night, you didn't think he was actually going to use that against you?
>
> A. No, Sir.
>
> Q. I'm sorry?
>
> A. No, Sir.
>
> Q. You were not concerned that he was going to inflict bodily harm on you?
>
> A. I didn't believe he would.
>
> Q. And he was at a distance where you had ample time and leverage to react without getting injured, or at least that was your perception at that time?
>
> A. Yes, Sir.
>
> Q. And that contributed to you not being afraid?
>
> A. Yes, Sir.

---

[11] Because we find Appellant's conviction legally and factually sufficient under an offer-type theory of simple assault, we find it unnecessary to analyze whether the conviction would be sufficient under an attempt-type theory of simple assault.

Q. And actually believing he wasn't going to do anything?

A. Yes, Sir.

On redirect examination, CC testified that although he was not "afraid" as Appellant was holding the knife near his throat, that changed when Appellant brought out the gun.

Despite CC's testimony that he did not believe Appellant would use the knife to inflict bodily harm on him, we find a rational factfinder could conclude beyond a reasonable doubt CC did feel reasonable apprehension. In general, brandishing a knife—even at a distance of several meters, much less six inches—may be sufficient to support a conviction for an offer-type assault. *See United States v. Smith*, 15 C.M.R. 41, 43–45 (C.M.A. 1954); *see also United States v. Salazar*, No. 202000134, 2021 CCA LEXIS 495, *5 (N.M. Ct. Crim. App. 27 Sep. 2021) (per curiam) (unpub. op.) (explaining the "brazen act" of "holding a knife to another's throat" is a "clear way[ ] of creating reasonable apprehension of immediate bodily harm"). In this case, CC's immediate reaction to Appellant holding the knife toward his neck—throwing his hands up between the blade and his neck—demonstrates he felt some degree of apprehension. Under the circumstances, including the fact that CC had previously seen Appellant brandish a knife at the unarmed SrA KC, and Appellant's generally erratic behavior at the barbecue—such apprehension was reasonable. CC's testimony on cross-examination that he did not believe Appellant would actually use the knife on him would not prevent a rational trier of fact from finding Appellant had caused apprehension. The existence of reasonable apprehension does not rely on the victim's belief in any particular degree of probability that bodily harm would actually result. Even if CC believed it was unlikely Appellant would use the knife on him, the military judge could reasonably focus on CC's immediate reaction and find CC felt, at least initially, some reasonable apprehension.

As with Specification 4 of Charge I, Appellant cites *Walters* to contend that we cannot perform our Article 66, UCMJ, factual sufficiency review of Specification 2 of Charge I because we cannot tell whether the military judge convicted Appellant of simple assault under an attempt-type or an offer-type theory. As with Specification 4, we are not persuaded. This is not a situation where the military judge created a fatal ambiguity by excepting "on divers occasions" language from the specification, and the evidence supports the military judge could find at least one theory of guilt beyond a reasonable doubt. *See Brown*, 65 M.J. at 359 (citations omitted).

Having given full consideration to Appellant's arguments, and drawing every reasonable inference from the evidence of record in favor of the Government, we conclude the evidence was legally sufficient to support Appellant's

conviction for simple assault as a lesser included offense under Specification 2 of Charge I. Additionally, having weighed the evidence in the record of trial, and having made allowances for the fact that the trial judge personally observed the witnesses and we did not, we also find the evidence factually sufficient.

### c. Charge I, Specification 3 (Aggravated Assault)

Specification 3 of Charge I alleged Appellant: "did, at or near Cannon [AFB], New Mexico, on or about 6 June 2020, with the intent to inflict bodily harm, commit an assault upon [CC] . . . by pointing at him and touching him with a dangerous weapon to wit: a loaded firearm."

Appellant contends, *inter alia*, the Government failed to prove beyond a reasonable doubt that the gun Appellant pointed at CC and touched him with was loaded. The Government's theory, at trial and on appeal, is that the loaded black .40 caliber handgun recovered from Appellant's truck was the same gun Appellant pointed at CC. We acknowledge that by drawing every reasonable inference in favor of the Government, a rational factfinder could make such a finding beyond a reasonable doubt, and therefore the military judge's finding is legally sufficient. However, we are not ourselves convinced beyond reasonable doubt that the Government proved Appellant used a loaded firearm. Therefore, we must set aside Appellant's conviction for aggravated assault as a matter of factual sufficiency review.

Based on the evidence, we perceive two reasonable possibilities that the gun Appellant aimed at CC was not loaded. First, CC specifically described the pistol as "tan" in color. The handgun recovered from Appellant's truck was described as all black. CC testified he knew Appellant owned multiple weapons. No firearm or image of a firearm belonging to Appellant—black, tan, or otherwise—was actually introduced at trial. Based on the evidence, it is possible Appellant used one pistol to threaten CC and decided to take a different pistol with him in his truck. It is true that Appellant did not tell the AFOSI agents during his interview that he remembered handling two different firearms inside his house. However, on appeal Appellant aptly notes he apparently had the opportunity to also arm himself in the house with a different and much larger knife than the pocketknife he brandished at SrA KC and CC, as TSgt DC observed. Similarly, CC testified it was possible Appellant "put [the gun] away or stopped" before he went outside, because Appellant was behind CC and CC could not observe him. It is reasonable to conclude that if Appellant had the opportunity to pick up a different knife inside his house, and could have stopped and "put away" the gun he held without CC observing him, then Appellant could have put down one gun and picked up another. If CC's testimony is correct that Appellant was holding a "tan" handgun, not the black one recovered later, there is no evidence in the record to prove the "tan" one was loaded.

Additionally, assuming for our analysis that CC was mistaken about the color, and that the pistol CC saw was the same black one security forces found in the truck, we are not persuaded the Government proved beyond reasonable doubt it was loaded at the time he pointed it at CC. Appellant told the AFOSI agents he left it unloaded on a table in his house when he was not carrying it. This assertion, although arguably self-serving, was not contradicted by any evidence the Government introduced. Appellant told the agents he could not remember whether he confronted CC before or after he picked up the pistol. CC could not tell if the pistol was loaded or not. Although security forces later found it loaded, Appellant might have loaded it in his house after he told CC to turn around and leave, or at some point while he was in his truck.

"A weapon is dangerous when used in a manner capable of inflicting death or grievous bodily harm. What constitutes a dangerous weapon depends not on the nature of the object itself but on its capacity, given the manner of its use, to kill or inflict grievous bodily harm." *MCM*, pt. IV, ¶ 77.c.(5)(a)(iii). The evidence does not indicate Appellant used or threatened to use the gun in a manner that would have constituted a dangerous weapon if it was unloaded, for example as a club. Accordingly, if the gun was not loaded, then Appellant would not be guilty of aggravated assault by pointing it at CC and touching him with "a dangerous weapon, to wit: a loaded firearm," as the military judge found. The two reasonable alternative possibilities presented by the evidence as described above lead us to agree with Appellant that his conviction for the aggravated assault alleged in Specification 3 of Charge I must be set aside.

However, we find the evidence both legally and factually sufficient to support Appellant's conviction for simple assault with a firearm as a lesser included offense under Specification 2 of Charge I, by excepting the words "dangerous" and "loaded." *See Riley*, 50 M.J. at 415 ("Appellate courts have authority to set aside a finding of guilty and affirm only a finding of a lesser-included offense"); Article 59(b), UCMJ, 10 U.S.C. § 859(b). The Government introduced sufficient evidence to prove beyond a reasonable doubt Appellant offered to do bodily harm to CC, that he did so unlawfully, and that he did so with force or violence by using a firearm. Moreover, we find Specification 3 of Charge I alleged each of these elements either expressly or by necessary implication.

Appellant's remaining arguments regarding Specification 3 of Charge I do not impede us from affirming Appellant's conviction of the lesser included simple assault. Appellant contends he was too intoxicated to form the specific intent to inflict bodily harm, one of the elements of aggravated assault with a dangerous weapon under Article 128, UCMJ. However, the lesser included offense of a simple offer-type assault does not include this specific intent element. Moreover, the evidence that Appellant was able to walk, enter and exit buildings, handle weapons, converse with those around him, and operate a

motor vehicle simply belies the contention that he was too intoxicated to form such specific intent. Appellant also contends the evidence does not prove CC believed he was at risk of immediate bodily harm when Appellant pointed the gun at him. We disagree. CC testified that he did feel fear and became afraid when Appellant pointed the gun at him. In addition, TSgt DC described CC as appearing "shaken up" and "afraid" immediately afterward, when CC said Appellant had pulled a gun on him. Again, so long as Appellant's offer of violence created reasonable apprehension in CC of imminent bodily harm, the Government did not need to prove CC believed in any specific probability that bodily harm would actually occur.

Accordingly, we set aside Appellant's conviction for assault with a dangerous weapon in violation of Article 128, UCMJ. Further, we except the words "dangerous" and "loaded" from Specification 3 of Charge I, find Appellant not guilty of the excepted words, and find him guilty of the lesser included offense of simple assault in violation of Article 128, UCMJ, and guilty of the remaining words in the specification.

### d. Sentence Reassessment

Having modified the findings, we have considered whether we may reliably reassess Appellant's sentence in light of the factors identified in *United States v. Winckelmann*, 73 M.J. 11, 15–16 (C.A.A.F. 2013). We conclude that we can. The modification results in a significant change to the penalty landscape and Appellant's exposure, but not necessarily a "dramatic" one. *See id*. at 15. Appellant's conviction for simple assault with a firearm not proven to be loaded rather than aggravated assault with a dangerous weapon reduces the maximum imposable term of confinement for the combined convictions from 11 years and 3 months to 6 years and 3 months; the remaining elements of the maximum punishment are unchanged. To be sure, Appellant's aggravated assault conviction carried by far the highest maximum term of confinement—eight years—and the military judge imposed a partially concurrent, partially consecutive term of 12 months of confinement for that offense alone. However, the lesser included offense of simple assault when committed with an unloaded firearm is punishable by three years in confinement and a dishonorable discharge, and remains the most serious of Appellant's offenses in terms of maximum punishment. *See MCM*, pt. IV, ¶ 77.d.(1)(b).

We find the remaining *Winckelmann* factors also favor reassessment. Appellant was sentenced by a military judge alone; the affirmed lesser included offense and remaining convictions very much "capture the gravamen of [the] criminal conduct included within the original offenses;" and the remaining offenses are of a type with which the judges of this court have "experience and familiarity." *Winckelmann*, 73 M.J. at 16. Furthermore, reassessment is greatly simplified by the fact the military judge imposed specific terms of

confinement for each offense, each concurrent or consecutive with the terms of confinement for the other offenses. Accordingly, we find sentence reassessment is appropriate.

The next question is what sentence the military judge would have imposed had he convicted Appellant of the lesser included simple assault with a firearm under Specification 3 of Charge I, rather than the charged offense. *See id.* at 15 (holding Courts of Criminal Appeals may reassess a sentence if it "can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity") (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)). Taking all factors into consideration, including *inter alia* the relationship of the affirmed lesser included offense to Appellant's other offenses, and that the essential nature of Appellant's misconduct remains unchanged, we conclude that the military judge would have imposed a sentence of at least four months in confinement for Specification 3 of Charge I, to be served concurrently with Specification 2 of Charge I (simple assault against CC by pointing at him with a knife) and consecutive with all other specifications. We further conclude our modifications to the findings undermine the language of the adjudged reprimand. Accordingly, we reassess the sentence to consist of a bad-conduct discharge, confinement for a total of seven months, and reduction to the grade of E-1.

## B. Trial Counsel's Argument

### 1. Law

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)). Under plain error review, the appellant bears the burden to demonstrate error that is clear or obvious and results in material prejudice to his substantial rights. *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted). "When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). A military judge is "presumed to know the law and to follow it absent clear evidence to the contrary," and to "distinguish between proper and improper" arguments. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted). Therefore, appellate relief for "plain error before a military judge sitting alone is rare indeed." *Robbins*, 52 M.J. at 457 (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)).

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). "Prosecutorial misconduct occurs when trial counsel 'overstep[s] the bounds of that

propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (alteration in original) (quoting *United States v. Fletcher*, 62 M.J. 175, 178 (C.A.A.F. 2005)). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, [for example] a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *Andrews*, 77 M.J. at 402 (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)). "[T]rial counsel may 'argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Halpin*, 71 M.J. 477, 479 (C.A.A.F. 2013) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). "A prosecutorial comment must be examined in light of its context within the entire court-martial." *United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005) (citation omitted).

We assess prejudice from improper argument by considering whether the trial counsel's comments were so damaging that we cannot be confident the appellant was convicted on the basis of the evidence alone. *See Halpin*, 71 M.J. at 480; *Fletcher*, 62 M.J. at 184. In assessing prejudice from improper argument, we balance three factors: (1) the severity of the misconduct; (2) the measures, if any, adopted to cure the misconduct; and (3) the weight of the evidence supporting the conviction or sentence, as applicable. *See Halpin*, 71 M.J. at 480; *Fletcher*, 62 M.J. at 184. "[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)).

**2. Analysis**

Appellant contends trial counsel's closing and rebuttal arguments were improper in three specific respects: mischaracterizing CC's testimony; expressing trial counsel's personal opinions; and mischaracterizing the law. Trial defense counsel did not object to any of the passages Appellant cites on appeal, so we review for plain error. We address each contention in turn.

### a. Characterization of CC's Testimony

Trial counsel's closing argument included the following:

> How do we know this gun was loaded? And how do we know it was the gun that was found in the car? Well, Your Honor, when you look at the combination of the evidence in this case, when you look at the fact that [CC's] testimony says a knife was to his face and a gun was to his belly, and *he looked down and he thought he was dead.*

(Emphasis added).

Appellant asserts CC's testimony "never came close" to trial counsel's contention that CC "thought he was dead." The Government responds that trial counsel was merely "forcefully assert[ing]" a reasonable inference from CC's testimony. *See United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994) (citations omitted) (explaining trial counsel may make "vigorous arguments . . . based on a fair reading of the record"). We agree with Appellant that CC's testimony does not support a reasonable inference that CC "thought he was dead." CC testified that he felt "a little fear" and "betrayed" when Appellant put the pistol against him, but he did not believe Appellant was going to shoot him. Even applying the plain error standard of a "clear" or "obvious" error, CC's testimony simply does not support what trial counsel said.

However, we find no material prejudice to Appellant's substantial rights, particularly in view of the slight nature of the error. This comment was a fleeting exaggeration in a lengthy closing argument, and it was not particularly relevant or impactful regarding the point trial counsel was attempting to make. In addition, Appellant was tried by a military judge alone. We presume the military judge filtered improper argument and based his findings on the evidence, absent indications to the contrary. Nothing in the record suggests the military judge failed to do so, or that Appellant was materially prejudiced by the error.

### b. Expressing Personal Opinions

During his rebuttal argument, trial counsel stated the following:

> [I]t's the combination of the knife, and then the gun. And the knife is still in front of [CC's] face. And that [Appellant] essentially responded to [CC] in that moment. And [Appellant] saw that [CC] wasn't afraid. So what does he do, he put the gun to his belly, to make sure that he was afraid. *If that's not specific intent, I don't know what is, Your Honor.*

> . . . .

> What do we know, what did you hear the testimony was. [CC] was told to turn around and walk out with his hands up. *If that's not specific intent to -- to use that object [the gun] for a specific purpose, I don't know what it is*, but there is no break here, Your Honor. . . .

> . . . .

> Your Honor, these Security Forces members put their lives on the line, put their bodies in that situation where they knew he had a weapon. And now [GM] was the one who took that chance in that moment, and as he was pulling [Appellant] to the ground

he[ ] hears knife, knife, knife. Your Honor, *if that's not a reason-able apprehension I don't know what is. And if [Appellant's] conduct isn't criminal, I don't know what it is.*

(Emphasis added).

Appellant contends trial counsel improperly relied on "his own personal judgment" in attempting "to resolve the most contentious points of litigation." *See Sewell*, 76 M.J. at 18 (stating trial counsel "may not . . . inject his personal opinion into the [ ] deliberations") (citation omitted). Appellant points to trial counsel's use of the expression that he "'did not know' what else could qualify to meet the respective required elements *but* that evidence the Government submitted." Appellant cites *United States v. Horn*, explaining that the injection of trial counsel's personal opinions risks introducing "a form of unsworn, un-checked testimony [that] tend[s] to exploit the influence of his office and un-dermine the objective detachment which should separate a lawyer from the cause for which he argues." 9 M.J. 429, 430 (C.M.A. 1980) (per curiam); *see also Fletcher*, 62 M.J. at 179–80 (quoting *Horn*).

Assuming without deciding that trial counsel's reference to his own knowledge or lack thereof—albeit in a colloquial expression—was a clear error, Appellant has not demonstrated material prejudice. As above, we find the severity of the error to be slight; and as above, the fact this was a judge-alone trial is significant. The military judge is presumed to filter out improper arguments and to base his findings on the evidence, absent clear evidence to the contrary. We find nothing in the record suggests the contrary in this case. To begin with, potentially unlike court members, we find it highly improbable the military judge was impressed by trial counsel's personal authority or opinions. Furthermore, the first two passages Appellant cites relate to trial counsel's argument that CC's testimony demonstrates Appellant had the specific intent to cause apprehension of bodily harm. If the military judge believed CC's testimony that Appellant pointed a gun at CC and held it against him, as the military judge evidently found, it is no great inferential leap to conclude Appellant did so with the intent to cause CC to fear imminent bodily harm. As to the third passage relating to the charged aggravated assault against GM, as described above in relation to legal and factual sufficiency, the evidence supports the military judge having convicted Appellant of an attempt-type lesser included offense of simple assault. In contrast, an offer-type assault theory—such as the theory trial counsel argued here—fails for the reasons described above. Accordingly, we may presume the military judge did not rely on trial counsel's argument in this respect, and Appellant was not prejudiced by it.

### c. Characterizing the Law

Trial counsel's closing argument included the following explanation:

> But to be clear, Your Honor, about what the -- if you were giving the member[s] an instruction, what that would require. "An offer to do bodily harm is an unlawful demonstration of violence by an intentional act or omission which creates in the mind of another, or a reasonable apprehension that proceeded [sic] immediate regard for harm." Your Honor, *the other is [SrA AA] watching the accused attempt to stab [GM].*

(Emphasis added).

Appellant contends trial counsel misstated the law in the passage quoted above. We agree that trial counsel's argument was incorrect as a matter of law. As discussed above in our analysis of legal and factual sufficiency, the evidence is insufficient to support Appellant's conviction of an assault against GM on an offer-type theory, because GM was not aware at the time of Appellant's attempt to stab him and therefore did not apprehend bodily harm from the demonstration of violence. *See MCM*, pt. IV, ¶ 77.c.(2)(b)(ii). Trial counsel's argument that Appellant created apprehension in SrA AA fails because, *inter alia*, SrA AA was not the named victim of the assault, and because Appellant's demonstration of violence did not cause SrA AA to reasonably apprehend imminent bodily harm to himself. Trial counsel's argument that the military judge could properly find Appellant guilty on such a theory was incorrect. Although trial counsel was arguably making a good faith attempt to explain how the evidence supported conviction, and not every weak or deficient argument amounts to prosecutorial misconduct, trial counsel are of course not permitted to misrepresent legal principles. *Cf. United States v. Bodoh*, 78 M.J. 231, 237 (C.A.A.F. 2019) ("When examining witnesses, trial counsel . . . cannot misstate legal principles.") (citations omitted). Accordingly, for purposes of our analysis, we will assume without holding that trial counsel's argument was clearly and obviously erroneous.

However, once again we find Appellant cannot demonstrate material prejudice. Again, the military judge is presumed to know the law, to disregard improper arguments, and to base his findings on the evidence, absent a clear indication to the contrary. Once again, the record does not indicate the contrary. The military judge found Appellant not guilty of the charged aggravated assault with a dangerous weapon which, as discussed above, had to be based on an offer-type theory. Instead, the military judge found Appellant guilty of a lesser included offense of simple assault which, under an attempt-type theory, was both legally and factually sufficient. Accordingly, we presume the military judge disregarded trial counsel's flawed argument, and therefore Appellant suffered no material prejudice.

## C. Convening Authority's Denial of Deferment Request

On 16 May 2021, ten days after Appellant was sentenced, one of Appellant's trial defense counsel submitted a memorandum for the convening authority's consideration pursuant to R.C.M. 1106. The memorandum primarily consisted of a brief summary of the findings and sentence, a description of two defense motions the military judge denied, and what was equivalent to a two-page unsworn statement by Appellant to the convening authority through counsel. At the conclusion of the memorandum, trial defense counsel requested the convening authority "grant any and all relief in accordance with the Rules for Courts-Martial, the Uniform Code of Military Justice (UCMJ), and all applicable case law."

On 28 June 2021, the convening authority issued a memorandum in which he took no action on the findings or sentence. The convening authority interpreted Appellant's 16 May 2021 request for "any and all relief" to include *inter alia* requests that he defer Appellant's adjudged confinement, adjudged reduction in grade, and automatic forfeiture of pay and allowances until entry of judgment. *See* Articles 57(b)(1) and 58b, UCMJ, 10 U.S.C. §§ 857(b)(1), 858b. The convening authority's memorandum stated that each of these three requests was "hereby denied" without stating a reason for the denial. The convening authority did waive automatic forfeiture of pay and allowances for six months for the benefit of Appellant's dependent child. Appellant received notice of the convening authority's decision on 29 June 2021; trial defense counsel received notice on 5 July 2021. The record discloses no indication the Defense objected or moved for correction of the convening authority's denial of the deferment request.

We review a convening authority's denial of a deferment request for an abuse of discretion. *United States v. Sloan*, 35 M.J. 4, 6 (C.M.A. 1992), *overruled on other grounds by United States v. Dinger*, 77 M.J. 447, 453 (C.A.A.F. 2018); R.C.M. 1103(d)(2). "When a convening authority acts on an [appellant]'s request for deferment of all or part of an adjudged sentence, the action must be in writing (with a copy provided to the [appellant]) and must include the reasons upon which the action is based." *Id.* at 7 (footnote omitted); *see also* R.C.M. 1103 (providing procedures for deferment). "A motion to correct an error in the action of the convening authority shall be filed within five days after the party receives the convening authority's action." R.C.M. 1104(b)(2)(B).

Because Appellant did not object or move to correct an error in the convening authority's decision on action, we review the convening authority's decision on action for plain error. *See United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citations omitted) (noting appellate courts review forfeited issues for plain error). Under the longstanding precedent of *Sloan*, the convening authority's failure to state his reasons for denying the requested deferments was an

error. *See* 35 M.J. at 7. For purposes of our analysis, we will assume without holding the error was clear or obvious. However, under the circumstances of this case, we find no material prejudice to Appellant. Appellant bore "the burden of showing that the interests of [himself] and the community in deferral outweigh[ed] the community's interests in imposition of the punishment on its effective date." R.C.M. 1103(d)(2). However, Appellant only impliedly requested deferment of his punishments, and offered no specific justification for any deferment. We further note Appellant not only forfeited the issue at the time, but he has not alleged on appeal prejudicial error by the convening authority. In the absence of any indication the convening authority entertained an improper rationale for denying the deferments, we find Appellant's material rights were not substantially prejudiced by the convening authority's failure to state his reasons.

## III. CONCLUSION

The finding of guilty as to assault with a dangerous weapon in Specification 3 of Charge I is **SET ASIDE**. The words "dangerous" and "loaded" are excepted from Specification 3 of Charge I and the excepted words are **SET ASIDE**; as to the remaining language of Specification 3 of Charge I, the lesser included offense of simple assault is affirmed. We reassess the sentence to a bad-conduct discharge, confinement for seven months, and reduction to the grade of E-1. The findings, as modified, and the sentence, as reassessed, are correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). The findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court